## <u>Ninth Circuit Case No. 24-5967</u>

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

JAMES DOE,
Plaintiff -Appellant,

v.

State Farm General Insurance Company,
Defendant (Real Party in Interest)

---

On Appeal from the United State District Court for the Northern District of
California, Case No. 3:23-cv-04734-JSC
The Honorable Jacqueline Scott Corley, United State District Judge

---

## APPELLANT'S OPENING BRIEF

---

**Plaintiff-Appellant James Doe, *Pro Se***
39899 Balentine Drive, Suite 200
Newark, California 94560
Telephone:   (510) 439-1698
Email:   fundudeinfinity@gmail.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

REVIEW STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   **A. <u>Plaintiff's Has Already Disclosed Highly Sensitive Information About His Mental Illnesses in the District Court's Docket</u>** . . . . . . . . . . . . . . 33

   **B. <u>Plaintiff's Reputation for Honesty Would Be Irreparably Injured and He Would Suffer Severe Personal Embarrassments</u>** . . . . . . . . . . . . . 38

      **(1) Plaintiff's Reputation for Honesty Would Suffer Irreparable Injury** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      **(2) Plaintiff Has Not Received Any Communication from Authorities** . 43

      **(3) Plaintiff Has Never Been Charged or Convicted of Any Crime** . . . . 47

      **(4) State Farm Has Failed to Provide Plaintiff with a Potentially "Exonerating" Report from the DOI under Ins. Code § 1872.4(a)** . 50

i

**C. The Public Already Has Access to All Substantive Pleadings** . . . . . . . 51

**D. State Farm Has Not and Will Not be Prejudiced** . . . . . . . . . . . . . . . . . 54

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

**Form 8. (Certificate of Compliance for Briefs)**

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Agricultural Ins. Co . v. Superior Court,*
    70 Cal.App.4th 385 (Ct. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Bafford v. Travelers Casualty Insurance Co. of America,*
    2012 WL 5465851 (E.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 39 n. 2

*Banerjee v. Superior Court,*
    69 Cal.App.5th 1093 (Ct. App. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*B.M. v. Wyndham Hotels & Resorts, Inc.,*
    2020 WL 4368214 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*The Connectors Realty Grp. Corp. v. State Farm Fire & Casualty Co.,*
    No. 19-cv-00743, (N.D. Ill. ongoing) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.,*
    61 F.3d 696, 699 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Doe v. Fellows,*
    927 F.2d 608 (9th Cir. 1991) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . 32

*Doe v. Lincoln National Life Insurance Co.,*
    2022 WL 2237214 (W.D. Wash. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Doe v. Samuel Merritt Univ.,*
    2013 WL 12386844 (N.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Doe v. Steele,*
    2020 WL 6712214 (S.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . 31, 51

*Doe v. United of Omaha Life Insurance Co.,*
    2023 WL 5919287 (N.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Does I Thru XXIII v. Advanced Textile Corp.,*
    214 F.3d 1058 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ellinger v. Magill*,
> 77 Cal.App.5th 287, 292 (Ct. App. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 48

*E.P.E. v. United States of America*,
> 2024 WL 2278353 (S.D. Cal. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Gossage*,
> 23 Cal.4th 1080 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-44

*Huskey v. State Farm Fire & Casualty Co.*,
> Case No. 22-cv-07014 (N.D. Ill. ongoing) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*K.H.B. ex rel. K.D.B. v. United Healthcare Insurance Co.*,
> 2018 WL 4053457 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local* 324,
> 173 F.3d 1221 (9th Cir. 1999), *cert. denied*, 528 U.S. 872 (1999) . . . . . . . 15

*In re Lesansky*,
> 25 Cal.4th 11 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Ms. R.H. v. United States of America*,
> 2023 WL 7563749 (N.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ocean S. v. Los Angeles County*,
> 2023 WL 8191123 (C.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Roe #1 v. United States of America*,
> 2020 WL 869153 (E.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 42

*Roes 1-2 v. SFBSC Mgmt., LLC*,
> 77 F. Supp. 3d 990 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . 14, 31, 34, 42

*R.W. v. Columbia Basin College*,
> 2018 WL 11436320 (E.D. Wash. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Sullivan v. Louisiana*,
> 508 U.S. 275 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 49

*United States of America v. Brackeen*,
  969 F.2d 827 (9th Cir. 1992) (en banc) (per curiam) . . . . . . . . . . . . . . . . 45

*United States of America v. Foster*,
  227 F.3d 1096 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*United States of America v. Ortega*,
  561 F.2d 803 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Ins. Code § 1872.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Cal. Penal Code § 550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39-40, 48, 49

**Rules and Regulations**

Fed R. Civ. P. 10(b)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Other Authorities**

The State Bar of California, attorney.
https://www.calbar.ca.gov/Public/Complaints-Claims/How-to-File-a-Complaint/After-You-File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

**Secondary Sources**

The Honesty Project, https://news.wfu.edu/2023/10/31/expanding-the-science-of-honesty/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 40

Los Angeles Times, October 28, 2024 by Staff Writer, "State Farm accused of funneling excess profits to parent as it seeks rate hike,"
https://www.latimes.com/business/story/2024-10-28/state-farm-general-mutual-reinsurance-rate-hike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n. 1

Thomas Jefferson Encyclopedia, https://www.monticello.org/research-education/thomas-jefferson-encyclopedia/honesty-first-chapter-book-wisdom/ . 40

## I.    INTRODUCTION

Plaintiff-Appellate James Doe ("Plaintiff") is appealing the district court's September 23, 2024 Order (Dkt. No. 68) requiring him to reveal his actual name after having permitted him to prosecute his action for one year after defendant State Farm General Insurance Co. ("State Farm") removed the action to federal court on September 14, 2023.  (Dkt. No. 1).

Plaintiff is appealing under the collateral order doctrine exception to the final decision requirement of 28 U.S.C. § 1291, because the district court abused its discretion by striking an unreasonable balance of the relevant factors this Court adopted in *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-69 (9th Cir. 2000).

Specifically, the district court failed to consider the ridicule and personal embarrassment that Plaintiff, who is a licensed attorney in California and New York states but has not practiced law for several years, would suffer from being accused by his homeowner's insurer of 30 years of committing or seeking to commit insurance fraud, a form of dishonesty crime, before a jury or a rational fact finder has rendered a verdict on Plaintiff's credibility and honesty in his presentation of his insurance claim to State Farm.  The insurance policy that insured Plaintiff's lost Blancpain gold wristwatch provides all risk coverage

globally; the policy excludes losses caused by extraordinary events like wars and nuclear explosions.

Plaintiff made a claim for "mysterious disappearance" of his wristwatch and repeatedly told State Farm that he did not know when, where, and how he lost his wristwatch, but that he believes the loss happened in the ensuing commotions after the car he was driving was rear-ended at night on June 19, 2022 on the Nimitz Freeway (I-880) by another car whose driver was driving at over 60 miles per hour. Plaintiff provided State Farm a notarized Proof of Loss stating the same together with a plethora of supporting documentations.

At an examination under oath ("EUO) on September 7, 2022 that was conducted by a highly experienced outside counsel who State Farm hired, Plaintiff testified similarly under oath and truthfully. A State Farm claim representative scheduled but canceled a recorded statement of Plaintiff, and instead referred Plaintiff for an EUO. At the EUO, Plaintiff testified that he gained some of his recollection of the relevant events after he saw a selfie photo that he took at the emergency room while waiting to be discharged by the emergency room medical doctor. That selfie photo, which Plaintiff found while preparing for his EUO, refreshed some of his recollections.

Plaintiff recalled and testified during the EUO that the last time he saw his wristwatch was when he placed it in the left pocket of a hoodie sweat jacket he was wearing before he began driving home from San Francisco to his home in the East Bay. Plaintiff had removed his wristwatch for several reasons, including the fact that a gold plate on the wristband was hurting his left wrist, which had been re-injured in a slip and fall accident on the stairs of a metro station about seven months earlier on December 8, 2021.

In that December 8, 2021 accident, Plaintiff left shoulder was disclosed, and an emergency room doctor reset his shoulder. Plaintiff was still recovering from injuries that he sustained after a car stuck him while he was crossing an intersection on a green light as a pedestrian on a Friday night on September 21, 2018. It had been raining very heavily when the accident happened. Plaintiff suffered a partially torn left rotator cuff in that accident.

On October 11, 2024, the district court granted State Farm partial summary judgment on all but Plaintiff James Doe's breach of contract and improper policy cancellation claims. (Dkt. No. 74.) Plaintiff understands that under 28 U.S.C section 1291, he cannot yet appeal the district court's grant to State Farm of partial summary judgment as to his insurance "bad faith" and defamation claims against State Farm. That appeal must await a "final" judgment.

This breach of contract action is not an ordinary one. This insurance case involves an intersection of civil insurance law and penal statutes that criminalize insurance fraud, which is a crime of dishonesty. This action arose out of State Farm's wrongful denial of coverage for Plaintiff's claim for his lost luxury wristwatch, valued at about $33,000, based on misrepresentation and concealment of material facts **Plaintiff allegedly made intentionally and knowingly** during the claim process. The critical statements which State Farm attributed to Plaintiff were made during a period of time when Plaintiff was drinking heavily, using excessive amounts of alprazolam—that had been prescribed to him by his long time psychiatrist for his anxiety and panic attacks—to cope with his mental illnesses, and his memory of the relevant facts was hazy, at best. Some of the alleged false statements sound like speculations that a drunken person would have been coaxed to make—the impact from an auto collision caused a heavy gold wristwatch to fall or fly out of the wearer's wrist. State Farm must prove that Plaintiff had the *mens rea* and that can only be done at trial, based on the facts of this case.

Plaintiff lost his wristwatch following a rear-end automobile collision that happened on southbound I-880 near Hayward, California, at night on June 19, 2022. Plaintiff's car was rear-ended at a high rate of speed; the at-fault driver purportedly told the responding California Highway Patrol ("CHP") officers that he crashed into Plaintiff's car at 62 miles per hour. Plaintiff was taken to a nearby

Kaiser Permanente hospital emergency room by first responders who pulled him out of his car, placed him on a gurney and inserted a neck collar in his neck in the ambulance. Several weeks later, Plaintiff's Kaiser neurologist diagnosed Plaintiff as suffering from head post-concussion symptoms due to the auto collision.

Plaintiff's own auto insurer, CSAA Insurance Exchange, paid a collision repair shop $17,853.85 to repair the damage to his new 2022 Honda Accord. The repairs to Plaintiff's car took about one month. Nearly two years later, Plaintiff's personal injury attorney obtained $20,000 for his personal injuries from the at-fault driver's insurer, which is State Farm Mutual Automobile Insurance Company.

Plaintiff has provided detailed information about his mental illnesses, including blood phobia, agoraphobia, anxiety, panic attacks, and decades long addition to alprazolam, in pleadings he has filed on the district court's docket.

Plaintiff also provided State Farm with dozens of pages of his medical records during the claim process. Additionally, State Farm obtained over 4,800 pages of Plaintiff's medical records during fact discovery, which while it has ended for Plaintiff, the district court is allowing State Farm to conduct further fact discovery in the form of Plaintiff's in person deposition and his in person independent medical evaluation ("IME") upon his return to California—when the district court granted State Farm this request for additional fact discovery after the

fact discovery cutoff (July 31, 2024), the district court suggested that Plaintiff's deposition could be done remotely, yet State Farm elected to conduct these fact discoveries in person months after the discovery cutoff in November 2024. The balance of justice seems to have tilted in favor of State Farm in this regard.

Plaintiff has been a member in good standing with the State Bar of California (and the New York State Bar) for decades. Plaintiff has advised the district court that he has never received any communication or notice from the State Bar of California or any other bar or professional licensing agency—Plaintiff is also licensed in another state bar and holds real estate broker licenses in California and another state—concerning, relating to, or arising out of any suspected fraudulent claim report(s) that State Farm may have filed against him relating to the disputed insurance claim.

Plaintiff has also notified the district court that no government authority or government agency like the California Department of Insurance ("DOI) has ever contacted Plaintiff concerning, involving, or arising out of any suspected fraudulent claim report(s) that State Farm may have filed against him.

Plaintiff's credibility and honesty have never been tried by a jury or rational fact finders concerning, relating to, or arising out of the disputed insurance claim, or this action. After ruling on State Farm's motion for summary judgment, the

district court concluded that the question of whether Plaintiff intentionally and knowingly made material misrepresentations and concealed material facts during the claim process should go to the jury—Plaintiff has requested a jury trial, which the district court has continued to May 19, 2025. Plaintiff has notified the district court that his actual name could be revealed to the public on the court's docket after a jury has decided on his fate after a trial.

In its September 23, 2024 Order (Dkt. No. 68), the district court stated that "[i]t is not in the public interest to hide from the public that a licensed attorney was found by a jury or some other court to have committed fraud." (*Id.*, at 4.) Plaintiff could not agree more with what the district court said, as a stand-alone statement. But there is no evidence even when the district court issued its September 23, 2024 Order that Plaintiff had been tried or that he has been found guilty of criminal fraud or liable for civil fraud; absolutely no evidence. Thus, it would have been improper for the district court to have used an unproven factor in its calculus to deny Plaintiff's request to continue to proceed anonymously as James Doe. It is simply premature, unreasonable and unjust for the district court to compel Plaintiff to reveal his actual name to the public when he has **not** been found by "a jury or some other court to have committed fraud." (Dkt. No. 68 at 4.)

Yet, State Farm and the district court would have Plaintiff proceed in this litigation under his actual name, exposing him to enormous ridicule and personal

embarrassments and irreparable social stigma as a dishonest person among his family members, peers, neighbors, and potential employers—they are his world.

Plaintiff has notified both State Farm and the district court and in pleadings he filed in the district court's docket that he and his foreign fiancé had been living in Bangkok, Thailand, because she is fleeing her war torn country of Myanmar, where Plaintiff was also born and escaped during a previous coup d'état, and his fiancé recently gave birth to their son at a hospital in Bangkok. Because of various health conditions his infant son has experienced, Plaintiff and his fiancé have had to stay with him in Bangkok for medical treatments. However, Plaintiff and his new family will be flying back to the San Francisco Bay Area later this month (November 2024). Naturally, Plaintiff must return to full time employment after he has returned to California so he can provide for his fiancé, whom he will soon marry, and their infant son. (Plaintiff had been living on his substantial savings after the June 19, 2022 auto accident and after he met his fiancé in early 2023.) In *Advanced Textile Corp.*, this Court stated that "[t]he district court also erred in concluding that anonymity can never be used to shield plaintiffs from economic injury." *Id.*, 214 F.3d at 1070.

Plaintiff has learned about two federal lawsuits pending in the Northern District of Illinois, discussed below, that involved alleged improper claims handling practices by a State Farm sister subsidiary—State Farm Fire & Casualty

Co. One action, which has been litigated for nearly six years, relate to alleged treatment of certain policyholders' claims presumptively fraudulent from inception. Plaintiff believes State Farm might have been engaging in the same or similar improper claims handling practices in California, namely that State Farm has incentivized and weaponized its Special Investigation Unit (SIU) to deny legitimate claims to maximize profits for the company. *See The Connectors Realty Grp. Corp. v. State Farm Fire & Casualty Co.*, Case No. 19-cv-00743 (N.D. Ill. ongoing) ("*Connectors*"); *Huskey v. State Farm Fire & Casualty Co.*, No. 1:22-cv-07014 (N.D. Ill. ongoing).

Two other U.S. district courts in the Northern District of California have granted anonymity to insureds who sued their insurers to protect the insureds who were suing to obtain policy benefits for socially stigmatizing claims. The rationale two senior district court judges articulated in those two cases should be adopted by this Court involving lawsuits where policyholders like Plaintiff seek to vindicate their rights under their policies, honor, dignity, and self-esteem. This Court should permit insureds to sue their insurers anonymously until the insureds have been found by a jury or rational fact finders to have actually committed insurance fraud at trial, or until the policyholders prevailed at trial. Otherwise, insurers, which already have the heavy upper hands, will have yet another legal means to chill their

policyholders from suing them for improperly denying their claims by improperly

accusing their own insurers of committing or seeking to commit insurance fraud.

K.H.B. ex rel. K.D.B., 2018 WL 4053457 (N.D. Cal. 2018) is instructive.

There, the Hon. William Alsup wrote: "a denial here [of anonymity to the plaintiff

insured] would incentivize insurance providers to implement a business strategy

that tilts towards denying socially stigmatizing claims, forcing claimants to litigate

the stigmatizing claims publically [sic] or elect to not pursue recovery. Justice does

not warrant such a conclusion. " *Id.*, 2018 WL 4053457, at *2. Those same

rationale resonated with the Hon. Jon S. Tigar in *Doe v. United of Omaha Life Ins.*

*Co.*, 2023 WL 5919287, at *2 (N.D. Cal. 2023).

The district court should heed the concerns or warnings articulated by

Judges Alsup and Tigar, and permit litigants like Plaintiff to pursue their lawsuits

against their insurers anomalously until a jury or a rational fact finder has rendered

a verdict after a trial.

Additionally, Plaintiff has disclosed highly sensitive and personal

information about his mental illnesses in the district court's docket. Moreover, the

district court has been able to adjudicate State Farm's motion to dismiss under Fed.

R. Civ. P. 10(b)(6) and motion for summary judgment or partial summary judgment

under Fed. R. Civ. P. 56, subd. (a) while allowing Plaintiff to proceed

pseudonymously under James Doe.  Defendant State Farm has known Plaintiff's identity for over 30 years because it insured his house for that many years.  The parties have been able to conduct pretrial discovery while Plaintiff has appeared anonymously in court pleadings.

Plaintiff respectfully requests this Court to adopt the rational of Judges Alsup and Tigar and reverse the distinct court's September 23, 2024 Order and permit litigants like Plaintiff to anonymously sue their insurers for socially stigmatizing claims, including claims where the claimant's honesty is a critical or decisive issue in the case.  This Court's guidance is needed to harmonize this legal standard for the district courts in this circuit.

Additionally, Plaintiff should be allowed to remain anonymous until a jury has rendered a verdict on the veracity of his insurance claim because he has disclosed highly sensitive and personal information about his mental illnesses in pleadings he has filed in the district court's docket.

## II.    ISSUES PRESENTED

This appeal presents two issues that appear to be issues of first impression in the Ninth Circuit.  Specifically, Plaintiff respectfully requests this Court to provide guidance to the district courts to evaluate factors that constitute  "ridicule or personal embarrassment" in situations where litigants' privacy to their "sensitive and highly personal" information need to be preserved and permit them to proceed

in court proceedings pseudonymously. In essence, what constitutes "social stigmas" for purposes of permitting a litigant anomaly in court proceedings?

The first issue is whether an insurance claimant should be permitted to litigate pseudonymously if his/her insurance company accuses him/her of making a fraudulent claim until he/she has been tried in court before a jury or a rational trier of facts. A related issue is whether a litigant's profession—lawyer, medical doctor, real estate licensee, schoolteacher, or police officer—should have any bearing on that determination. In other words, should a heightened standard apply to litigants whose professions require honesty and public trust? If so, what, if any, mitigating circumstances or factors should a district court consider in its determination of whether to grant anonymity?

*K.H.B. ex rel. K.D.B.*, 2018 WL 4053457, is instructive as to the first issue presented. There, Judge William Alsup wrote: "a denial here [of anonymity to the plaintiff insured] would incentivize insurance providers to implement a business strategy that tilts towards denying socially stigmatizing claims, forcing claimants to litigate the stigmatizing claims publically [sic] or elect to not pursue recovery. Justice does not warrant such a conclusion.[1]" *Id.*, 2018 WL 4053457, at *2.

---

[1] Judge Alsup's concerns, which Judge Tigar recently echoed, seems to have envisioned the improper claims handling practices that are alleged in *The Connectors Realty Grp. Corp., et al. v. State Farm Fire & Casualty Co.*, Case No. 19-cv-00743, pending in the U.S. District Court for the Northern District of

Illinois, Eastern Division, currently before the Hon. Jeremy C. Daniel ("*Connectors*") that was first filed on February 5, 2019, nearly six years ago.

In *Connectors*, Plaintiffs alleged that defendant State Farm Fire & Casualty Co.'s Special Investigation Unit ("SIU") treated their claims presumptively fraudulent. *See*, *e.g.*, *Id.*, at Dkt. No. 359, at 1 (plaintiffs alleged that defendant "investigated [their claims] for fraud from the inception of the claim process"). Plaintiffs alleged that "through the 'Fill the Cups' initiatives, which called for State Farm representatives to send as many claims to the SIU to be investigated for fraud." *Id.*, at 10-11.

In ruling on defendant State Farm Fire & Casualty Co.'s motion for summary judgment in *Connectors*, Judge Jeremy C. Daniel wrote the following in his August 21, 2024 Memorandum Opinion and Order: "Campbell-Jackson references a 'fill the cups' policy that she claims targeted minority communities. According to Roger Krupp, whom the defendant did employ in 2017, a policy by that name was still in effect in 2017. Krupp's testimony describes a policy designed to increase the defendant's utilization of fraud investigators. Whether that policy targeted certain zip codes as the plaintiffs and Campbell-Jackson allege is a question for the jury." *Id.*, Dkt. No. 401 at 7.

If defendant State Farm General Ins. Co., a sister subsidiary of defendant State Farm Fire & Casualty Co. to the same parent company State Farm Mutual Automobile Ins. Co., deploys the same "fill the cups" policy in California, what the plaintiffs in *Connectors* may later expose at trial could be the tip of the iceberg, proving the Hon. Alsup's concerns in *K.H.B. ex rel. K.D.B.* to be a prescient warning.

State Farm General Ins. Co. is a subsidiary of State Farm Mutual Automobile Ins. Co. *See*, *e.g.*, L.A. Times, October 28, 2024 by Staff Writer, "State Farm accused of funneling excess profits to parent as it seeks rate hike," https://www.latimes.com/business/story/2024-10-28/state-farm-general-mutual-reinsurance-rate-hike (stating "State Farm General, California's largest home insurer, is being accused of boosting the profits of its parent company at the expense of state policyholders — while claiming it's in financial distress and in need of a 30% rate hike.).

Those same concerns resonated with Judge Jon S. Tigar in *Doe v. United of Omaha Life Ins. Co.*, 2023 WL 5919287, at \*2. There, the Judge Tigar echoed the exact concerns of Judge Alsup: "Moreover, a denial here would incentivize insurance providers to implement a business strategy that tilts towards denying socially stigmatizing claims, forcing claimants to litigate the stigmatizing claims public[ly] or elect to not pursue recovery." *Id.*, 2023 WL 5919287, \*1 (quoting *K.H.B. ex rel. K.D.B.*, 2018 WL 4053457, at \*2).

*Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015) is instructive. There, the district court noted "[t]his district has thus considered 'social stigmatization' among the 'most compelling' reasons for permitting anonymity." *Id.*, 77 F. Supp. 3d at 994 (citing *Advanced Textile Corp.*, 214 F.3d at 1067–68).

The second issue is whether a litigant who has revealed highly personal and sensitive information about his mental illnesses in court filings in support of his request to litigate pseudonymously be allowed to proceed until a jury or a rational trier of acts has adjudicated his credibility and honesty at trial.

## III. JURISDICTIONAL STATEMENT

In *Advanced Textile Corp.*, 214 F.3d at1065-1067, this Court concluded that it has jurisdiction to review a district court's order granting or denying a litigant's

motion to proceed anonymously under the collateral order doctrine exception to the final decision requirement under 28 U.S.C. § 1291. *Id*, 214 F.3d at 1066 (noting "The collateral order doctrine creates an exception to the final decision rule." (citations omitted)).

## IV.   REVIEW STANDARD

This Court reviews the district court's decision to deny Plaintiff's request to continue to proceed pseudonymously for an abuse of discretion. *See, e.g., Does I thru XXIII* v. *Advanced Textile Corp.*, 214 F.3d at 1069 (noting "We review a district's case management decision for an abuse of discretion." (citations omitted)). In *Advanced Textile Corp.*, this Court explained that "we may reverse the district court's decision if the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." (citing *K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local* 324, 173 F.3d 1221, 1223 (9th Cir. 1999), *cert. denied*, 528 U.S. 872, 120 S. Ct. 176, 145 L. Ed. 2d 148 (1999); *Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995)). *Id.* In *Creative Tech. Ltd.*, this Court stated that **the district court's decision "deserves substantial deference."** *Id.*, 61 F.3d at 699 (citations omitted) (emphasis added).

## V.    FACTUAL BACKGROUND

This action arouse out of State Farm (falsely) accusing Plaintiff of committing or seeking to commit insurance fraud in his presentation of a claim for his lost wristwatch.  (Dkt. No. 75-1 at ¶¶ 3-14.)  In essence, State Farm accused Plaintiff of criminal dishonesty.  This case goes squarely to Plaintiff's moral character for honesty, subjecting him to grave irreparable injury in the form of social stigma for dishonesty.

Our society places great importance on a person's honesty.  After conducting extensive research from 2020 to 2023 in a vast project called the Honesty Project, academic researchers and scholars found that a person's honesty is the number one virtue that other people value.

Plaintiff has been a licensed attorney at law and real estate broker in good standing in California and New York for decades and previously worked in the insurance industry.  (Dkt. No. 75-1 at ¶ 15.)

Plaintiff's litigation odyssey began on June 19, 2022 around 8:00 p.m.  It was Father's Day.  On that night, while returning home with some takeout food from San Francisco to have dinner with his then 89 year old father, Plaintiff was rear-ended by another car on southbound I-880 near Hayward, California.  Earlier that day, Plaintiff had visited with his elderly aunt Esther, who is his late mother's

younger sister, at her studio apartment in Nob Hill in San Francisco. The other driver told the CHP officers that he crashed into the rear of Plaintiff's car at 62 mph. When the collision happened, Plaintiff's Blancpain gold wristwatch ("wristwatch"), insured by State Farm under a Personal Articles Policy ("Policy"), was in the pocket of a hooded sweatshirt he was wearing. An ambulance transported Plaintiff from the scene of the collision to the Fremont Kaiser hospital emergency room ("ER"), where he was treated and discharged. (Dkt. No. 64-1 at ¶¶ 18-28; FAC ¶¶ 6-10, 15.)

About two weeks later, after continued use of excessive amounts of prescription medication and alcohol to cope with the physical pains and mental distresses exacerbated by yet another auto collision, Plaintiff realized that his wristwatch was missing, and he could not find it anywhere. On July 4, 2022, Plaintiff filed a claim for his lost wristwatch on State Farm's website. By letter dated January 3, 2023, nearly six months later, State Farm denied his claim and accused him of making a fraudulent insurance claim, subjecting him to criminal prosecution for insurance fraud. (Dkt. No. 64-1at ¶¶ 29-37; FAC ¶¶ 11, 12, 14, 15, 27, Exhibit B.)

On July 19, 2024, Plaintiff saw Dr. S. L., a neurologist at Fremont Kaiser. She examined Plaintiff for about an hour. Dr. S. L. diagnosed Plaintiff as suffering from post-concussion syndrome because of the June 19, 2022 auto accident. Dr. S.

L. referred me to occupational therapy (for my light sensitivity) and speech therapy (for onset of stuttering) for treatments. Dr. S. L.'s diagnosis contradicted the Kaiser ER doctor's mistaken diagnosis that Plaintiff did not suffer a head concussion. Had the Kaiser ER doctor properly diagnosed Plaintiff, he would have canceled his trip to Montreal because his direct flight to Montreal and his return flight to SFO aggravated his head concussion from the June 19, 2022 auto collision. (Dkt. No. 64-1 at ¶ 38.)

CSAA Ins. Exchange insured Plaintiff's car, a 2022 Honda Accord, and it paid AW Collision USD $17,853.85 to repair the physical damage to his Honda Accord. Contrary to what the first responders like the EMTs noted in their reports or relayed to the Kaiser ER doctors and staff, the damage to Plaintiff's car was not minor. It took about one month for AW Collision to repair the damage to his car. Plaintiff had previously planned to sell my car to CarMax on Monday, June 20, 2022. CarMax had agreed to buy my car for USD $40,000 guaranteed. Plaintiff bought a new 2022 Acura RDX A-Spec Advance Package on Friday, June 17, 2022. The accident happened on Sunday night on June 19, 2022. (DKt. No. 64-1 at ¶ 39.)

The other driver's car was insured by State Farm Mutual Automobile Ins. Co. ("State Farm Mutual"), which accepted 100% liability for Plaintiff's damages. (Evidently, Plaintiff's CSAA claim adjuster initiated a claim with State Farm

Mutual using the information from the CHP report. Plaintiff did not contact State Farm Mutual because it was more convenient for him to deal with CSAA for the property damage to his car and reimbursements of his medical expenses under his medical payment coverage.) In early June 2024, Plaintiff's California attorney resolved his personal injury claim against the at-fault driver with State Farm Mutual for USD $20,000. (Dkt. No. 64-1 at ¶ 40.)

Based on Plaintiff's review of what State Farm recently produced as the claim file involving Plaintiff's claim, he had his first telephone conversation with State Farm's SIU Claim Specialist Ms. Samantha Davidson on July 7, 2022, which was four days after he filed my claim on July 3, 2022. Much of what Ms. Davidson wrote in the claim file about their July 7, 2022 conversation is not consistent with Plaintiff's recollection of what they may have discussed during that conversation and some of what she wrote is not consistent with what Plaintiff would have said. It seems that Ms. Davidson took great liberty at paraphrasing and misstating what Plaintiff said; some of the notes Ms. Davidson made in the claim file reflect her selective memory of that conversation. But Plaintiff was also unwell mentally and physically during this time. (*Id.* at ¶ 42.)

Among the comments in Ms. Davidson's claim file notes dated July 7, 2022 at 3:10 PM CDT is ""based on veh photos and PR, the rear end impact does not appear to warrant such an injury to lose consciousness and such memory loss."

That is untrue. Plaintiff never said he lost consciousness; what Plaintiff repeatedly told people was that because he kept his eyes closed most of the time, and that he does not know what transpired. Ms. Davidson had insufficient context to draw this factual conclusion—she did not want to hear about Plaintiff's preexisting physical injuries and mental conditions. Importantly, Ms. Davidson discouraged Plaintiff from talking about his medical conditions, which he was hoping to do to provide her with context by explaining to her his mental illnesses. Plaintiff repeatedly told Ms. Davidson that he did not recall much of the events that transpired the night of June 19, 2022, yet she kept prodding him on the telephone and elicited illogical speculative statements about how he might have lost his wristwatch. Plaintiff was exhausted speaking with her, because she kept prodding him to speculate about whether he had taken his wristwatch off and placed it in the center consol, why he was wearing the wristwatch on that day, whether he had the wristwatch on during the collision, and if so, whether Plaintiff hit the driver door with his left hand, where he always wore his watches, with the wristwatch, and whether it was possible for the wristwatch to fall off my left wrist from the impact of the collision. Plaintiff told her that he could not answer those questions, and he would be speculating since he do not recall much of what happened that night. (*Id.* at ¶ 43.)

Ms. Davidson's July 7, 2022 claim file notes stated, inter alia: "NI repeatedly stated how he doesn't remember anything from the accident or the

hospital and cannot provide specific details about this but appears to recall detailed information that is not relevant to the loss, from that day and post loss." (*Id.* at ¶ 44.)

Ms. Davidson scheduled Plaintiff's recorded statement for July 20, 2022. (*Id.* at ¶ 45.)

Plaintiff's review of the claim file notes Ms. Davidson entered for the scheduled July 20, 2022 telephone conversation indicates that she left out key points their discussed, and she wrote notes that do not comport with Plaintiff's vague recollection of that telephone call. What Plaintiff distinctly remembers about that conversation is Ms. Davidson asking him if I had any children. Plaintiff told her no. This question and response do not appear in the July 20, 2022 claim file notes. The claim file notes do not show that Ms. Davidson almost immediately canceled the scheduled recorded statement of Plaintiff after he told her that he had taken Xanax earlier in advance of his recorded statement. Plaintiff asked her if she knew what Xanax is, and she said she did not know. Therefore, Plaintiff asked her to Google Xanax. Shortly thereafter, Ms. Davidson came back on the line and told Plaintiff that she was canceling his recorded statement because "she felt uncomfortable proceeding further," and that she was referring him for an EUO. Ms. Davidson embellished this part of their conversation in her claim file notes— "Due to circumstances, SIU CS advised we will wait to discuss details of loss in

full so he will need to go through the details once (he kept referencing things as "triggering trauma") SIU explained will review for EUO, NI understood." Even after cancelling the scheduled recorded statement for that morning, Ms. Davidson prodded Plaintiff to speculate about what happened to his wristwatch, assuring him that she was on his side. She said her job was to help Plaintiff find coverage. (*Id.* at ¶ 46.)

These comments are not in the claim file notes that State Farm produced on July 8, 2024. Ms. Davidson's stratagem is consistent with what the plaintiffs alleged in *Connectors Realty Group Corp., et al. vs. State Farm Fire & Casualty Co.*, No. 1:19-cv-00743 (N.D. Ill.) ("*Connectors*"), a lawsuit that has been heavily litigated for nearly six years since plaintiffs first filed their complaint on February 5, 2019. In *Connectors*, the district court recently ruled against defendant State Farm Fire & Casualty Co. in its summary judgment motion as to Count II of Plaintiffs' operative complaint. In its August 21, 2024 order, the district court concluded that Plaintiffs' Count II survived summary judgment. In Count II, Plaintiffs alleged that State Farm Fire & Casualty Co.'s SIU department treated claims filed by African Americans in certain zip codes as presumptively fraudulent; treating those policyholders "guilty until proven innocent." (*Connectors*, No. 1:19-cv-00743 (N.D. Ill. ongoing), Dkt. No. 401 at 7-8.) Here, Ms. Davidson and Ms. Gillespie treated Plaintiff claim as presumptively fraudulent as soon as his claim

was referred to SIU, and they never wavered from that position despite new credible evidence to the contrary. Ms. Davidson ran a credit check on Plaintiff. The report came back with no negative information. Additionally, Ms. Davidson later learned that Plaintiff had no outstanding debt other than the loan on my current car, an Acura RDX. And no credit problems. (*Id.* at ¶ 46.)

On July 20, 2022, Plaintiff emailed State Farm a notarized Sworn Statement in Proof of Loss ("Proof of Loss"), attesting that he does not know how, when, or where he lost my wristwatch. (*Id.* at ¶ 47.)

Plaintiff had sobered up a little and his mental health had improved slightly by the time of his September 7, 2022 EUO. He prepared for the EUO by reflecting long and hard on the events that happened on June 19, 2022, before and after the auto collision. As part of his preparation, he looked through the photos in his iPhone. Plaintiff found a selfie photo that he took at the ER. The photo showed that Plaintiff was wearing a navy blue hooded sweatshirt jacket on the night of the accident. The photos helped refresh Plaintiff's recollection of some of the events that happened on June 19, 2022 for his EUO. (*Id.* at ¶ 48.)

49. On September 7, 2022, Plaintiff submitted to an EUO before a State Farm outside counsel, attorney Garcia, who purports to be highly experienced in conducting EUOs for insurance companies. Plaintiff answered each and every

question attorney Garcia asked him truthfully and completely to the best of his knowledge and recollection. Plaintiff testified that he found a selfie photo that he took at the ER in preparation for his EUO and that photo refreshed his recollection of the fact that he placed his wristwatch in the left pocket of a hooded sweatshirt jacket that he was wearing when he drove back home from San Francisco the night of June 19, 2022, after he visited his aunty Esther, and after he bought some takeout food from the Golden Horse Restaurant. During the EUO, Attorney Garcia said Plaintiff told State Farm's SIU Specialist Samantha Davidson that he searched his Honda Accord in the tow yard for his wristwatch. Plaintiff told her that what Ms. Davidson said was false and it was impossible, because he did not know then that his wristwatch was missing. How would Plaintiff know to search for the wristwatch in his car when he did not know then that it was missing. Plaintiff told Attorney Garcia that certain crucial statements that Ms. Davidson alleged that Plaintiff made to her were false because he never made those statements to her. Plaintiff stands by the testimony that he provided at his EUO. (*Id.* at ¶ 49.)

At the request of Attorney Garcia, Plainitff promptly notified the Blancpain corporation, Kaiser Permanente, the ambulance company, and Uber, about the disappearance of his watch. The Blancpain corporation did not respond to Plaintiff's notice. Kaiser, the ambulance company, and Uber, responded to him, advising that no one report finding the wristwatch to any of them. Plaintiff

telephoned the Fremont Kaiser security department shortly after he realized that his wristwatch was missing and asked the security staff whether anyone had turned in a gold wristwatch; she said no. Plaintiff also contacted the ambulance company previously to ask whether anyone had found a gold wristwatch; they said no. Plaintiff did not know how to contact Uber's lost and found until attorney Garcia instructed me on how to do so; he had never contacted Uber for such matter. (*Id.* at ¶ 50.)

Plaintiff's review of the State Farm claim file notes revealed that Ms. Davidson filed reports with the NICA (National Insurance Crime Bureau) and California Department of Insurance's ("DOI") eFD-1 (electronic suspected fraudulent claim) portal. In her eFD-1 report to the DOI, Ms. Davidson stated that **"There are no witnesses to the misrepresentations made by the insured."** Yet, Ms. Davidson chose to ignore Plaintiff's sworn truthful and complete EUO testimony. (*Id.* at ¶ 51.)

On January 3, 2023, State Farm denied Plaintiff's claim, contending that he made material misrepresentation and concealed material facts, which voided the Policy. (*Id.* at ¶ 52.)

Plaintiff was compelled to file this action against State Farm because it not only wrongfully denied coverage for a first party property loss claim that should

have been covered, but it also falsely and recklessly accused Plaintiff of committing (and or seeking to commit) an insurance crime, subjecting his to possible confinement in a California state prison and possible disbarment as an attorney. (Dkt. No. 64-1 at ¶ 53.)

Plaintiff originally filed this action in California superior court using a pseudonym "James Doe" to protect his privacy, his family, his reputation, and his livelihood, because he has been struggling with mental illnesses, which are still stigmatized in our society, and continues to need and is still receiving psychiatric treatments. Plaintiff's decades long struggle and continuing struggle with mental illnesses vastly impacted his mental state and memory of the relevant time period[.]" (Compl. and FAC at n. 1.)

Plaintiff notified the district court that he has never received any notice or communication from any attorney licensing agency (such as the State Bar of California) concerning, involving or arising out of any suspected fraudulent claim report(s) that State Farm may have filed against him; absolutely none. (Dkt. Nos. 75-1 at ¶ 16, 81-1 at ¶ 13.) Plaintiff also notified the district court that he is unaware of any administrative proceedings against him at any attorney licensing agency because of any suspected fraudulent claim report(s) that State Farm may have filed against him. (Dkt. No. 64-1 at ¶¶ 29-.)

Plaintiff notified the district court that no government authority has ever contacted him about any suspicious fraudulent claim report(s) that State Farm has filed against him. (Dkt. No. at ¶¶ 18, 19.)

Plaintiff has never been convicted of any crime, especially a heinous crime of fraud, which is a crime of dishonesty. No jury has had to decide Plaintiff's moral character for honesty, and no jury has yet had an opportunity to determine the credibility of Plaintiff and the veracity of his claim for his lost wristwatch.

Other than what amounts to "she said, he said" statements, or what is akin to misstatements that Plaintiff seems to have made while he was under the influence of alcohol and alprazolam and elevated mental stresses and hazy memory, State Farm has presented absolutely no evidence to support its assertions that Plaintiff knowingly and intentionally made material misrepresentations relating to the loss of his wristwatch during the claim investigation process. (Dkt. Nos. 75-1 at ¶¶ 29, 30, 81-1 at ¶ 16.)

## VI.    PROCEDURAL HISTORY

On June 20, 2023, Plaintiff filed his original complaint ("Comp."), styled as a class action, in the Superior Court of the State of California for the County of Alameda in Oakland. Prior to service, Plaintiff filed a First Amended Complaint

("FAC") on August 17, 2023. Plaintiff served the FAC on State Farm by personal service on August 18, 2023.

On September 14, 2023, State Farm removed the action to U.S. District Court for the Northern District of California in San Francisco. (Dkt. No. 1.)

On September 21, 2023, State Farm filed a F. R. Civ. P. 10(b)(6) motion to dismiss against the FAC. (Dkt. No. 10.)

On November 8, 2023, the district court, the Honorable Jacqueline Scott Corley presiding, issued an order on State Farm's 12(b)(6) motion to dismiss. (Dkt. No. 22.)

On November 21, 2023, State Farm filed its answers to the surviving claims under the FAC.

On June 5, 2024, the district court granted Plaintiff's motion to represent himself and to proceed *pro se*.

On August 21, 2024, State Farm filed a motion for summary judgment or partial summary judgment as to Plaintiff's remaining claims. (Dkt. No. 48.)

On September 26, 2024, the district court issued an Order to Show Cause ("OSC") requiring Plaintiff to file a response thereto on or before September 4,

2024 (the same day that Plaintiff's Opposition to State Farm' motion for summary judgment or partial summary judgment was due).

On September 4, 2024, Plaintiff filed both his Opposition to State Farm's motion for summary judgment or partial summary judgment motion (Dkt. No. 64), and his response to the district court's September 26, 2024 OSC. (Dkt. No. 65.)

On September 15, 2024, Plaintiff filed an amended response to the district court's September 26, 2024 OSC. (Dkt. No. 67.)

On September 23, 2024, the district court issued an order rejecting Plaintiff's request to continue to proceed pseudonymously and ordered Plaintiff to continue to proceed under his actual name. (Dkt. No. 68.)

On October 1, 2024, Plaintiff filed a notice of appeal to the Court of Appeals for the Ninth Circuit as to the district court's September 23, 2024 order, which required him to continue to proceed under his actual name. (Dkt. No. 69.)

On October 10, 2024, the district court held a hearing on State Farm's motion for summary judgment or partial judgment and ordered Plaintiff to file a Motion to Stay (pending appeal) by October 17, 2024. (Dkt. No. 72.)

On October 11, 2024, the district court issued its order on State Farm's motion for summary judgment or partial summary judgment. (Dkt. No. 74.)

On October 17, 2024, Plaintiff filed a motion to stay the district court's September 23, 2024 order pending appeal. (Dkt. No. 75.)

On October 28, 2024, State Farm filed its Response to Plaintiff Motion to Stay pending appeal. (Dkt. No. 80.)

On November 4, 2024, Plaintiff filed a Reply to his Motion to Stay pending appeal. (Dkt. No. 81.)

## VII.  LEGAL STANDARD

In *Advanced Textile Corp.*, this Court noted that "[i]n this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, **ridicule or personal embarrassment**.'" *Id.*, 214 F.3d 1067-68 (citations omitted; emphasis added). There, this Court noted that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.*, 214 F.3d at 1068.

In *United of Omaha Life Ins. Co.*, the district court noted: "The Ninth Circuit has written that a plaintiff has a need to proceed anonymously where the plaintiff seeks to 'preserve privacy in a matter of sensitive and highly personal nature.'"

*Id.*, 2023 WL 5919287, at *1 (citing *Advanced Textile Corp.*, 214 F.3d at 1068 (omitting quotation marks)).

In *Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015), the district court noted: "**This district has thus considered 'social stigmatization' among the 'most compelling' reasons for permitting anonymity.** This is consistent with the Ninth Circuit's instruction in *Advanced Textile* that anonymity is permitted where the subject matter of a case is 'sensitive and highly personal[.]'" (citing *Advanced Textile Corp.*, 214 F.3d at 1067-68) (emphasis added). *See also Roe #1 v. United States of America,* 2020 WL 869153, at *1-2 (E.D. Cal. 2020) (finding that plaintiffs who were "disqualified from acquiring, keeping, or bearing firearms" after being subjected to a mental health evaluation were allowed to proceed pseudonymously because such "evaluations inherently carry a risk of social stigmatization because the state, by virtue of subjecting a person to such . . . evaluations, is indicating that it does not believe that the person is of sound mind and, instead, perceives that person as a threat to herself or others[;]" *Doe v. Steele*, 2020 WL 6712214, at *4 (S.D. Cal. 2020) (noting "the Court can manage the pretrial proceedings to mitigate problems that anonymity may arise[]") (citing *SFBSC Mgmt., LLC*, 77 F. Supp. 3d at 996) (quoting *Advanced Textile Corp.*, 214 F.3d 1069, 1072)).

In *R.W. v. Columbia Basin College*, 2018 WL 11436320 (E.D. Wash. 2018), the district court noted that "[t]he key inquiry is whether the condition is uncommon, to the point where the social stigmatization would be substantial upon revelation of the condition." *Id.*, 2018 WL 11436320, *2 (stating "Common social stigma cases include those involving mental illness." (citations omitted)). Moreover, in *Doe v. Fellows*, 927 F.2d 608 (9th Cir. 1991) (unpublished opinion), this Court stated that "[b]ecause Doe's case involves his detention for psychiatric evaluation, Doe may have a legitimate interest in protecting his privacy by proceeding under a pseudonym." *Id.*, 927 F.2d at *2 (noting "Other courts have specifically recognized that the use of pseudonyms may be appropriate in cases involving mental competency." (citations omitted)) (citation omitted)).

In *Oceans S. v Los Angeles County*, 2023 WL 8191123 (C.D. Cal. 2023), the district court noted "'[A] district court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party.'" (citing *Advanced Textile Corp.*, 214 F.3d at 1068; *Id.*, 2023 WL 8191123, at *2).

The district court in *K.H.B. ex rel. K.D.B.* summarized the legal standard as follows:

"FRCP 10 requires that 'the title of the complaint must name all the parties.' This rule reflects the 'paramount importance of open courts' such that the

'default presumption is that plaintiffs will use their true names.' In this circuit, parties may use pseudonyms in unusual cases when nondisclosure of the party's identity is necessary 'to protect a person from harassment, injury, ridicule or personal embarrassment.' Moreover, a 'party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity.'"

*Id.*, 2018 WL 4053457, at *1 (citations omitted).

## VIII. ARGUMENT

### A. <u>Plaintiff's Has Already Disclosed Highly Sensitive Information About His Mental Illnesses in the District Court's Docket</u>

In the district court's docket, Plaintiff has already disclosed detailed information about his mental illnesses, including blood phobia, agoraphobia, anxiety, panic attacks, and decades long addiction to alprazolam, which his long time psychiatrist has prescribed for him for his anxiety and panic attacks. Thus, Plaintiff should be allowed to proceed to trial pseudonymously to protect his privacy interest involving his highly sensitive and personal mental illnesses information in order to protect Plaintiff from ridicule and personal embarrassment. (Dkt. Nos. 64-1 at ¶¶ 3-8, 67-1 at ¶¶18-20, 81-1 at ¶¶ 32-34.) *See, e.g., United of Omaha Life Ins. Co.*, 2023 WL 5919287, at *1 (noting "According to the complaint, Plaintiff suffers from severe major depressive disorder, generalized anxiety disorder, severe cannabis use disorder, opioid use disorder, and insomnia.

Associating Plaintiff with this combination of conditions, especially his substance use disorders, through disclosure of his identity would necessarily expose Plaintiff to social stigma and would threaten future job opportunities that he may pursue. These circumstances render this case 'unusual' and thus make anonymity appropriate." (citation omitted); *K.H.B. ex rel. K.D.B.*, 2018 WL 4053457, at *1 (noting "When plaintiff was still a minor, he had more than one suicide attempt, was diagnosed with several mental illnesses, and had issues with substance abuse[]." (citation omitted)); *SFBSC Mgmt., LLC*, 77 F. Supp. 3d at 994; *E.P.E. v. United States of America.*, 2024 WL 2278353, at *1 (S.D. Cal. 2024) (citing *Doe v. Samuel Merritt Univ.*, 2013 WL 12386844, at 1-2 (N.D. Cal. 2013) (noting that pseudonymity was granted "even when plaintiff 'simply assert[ed] her unsupported belief that she will be stigmatized' for having 'Genialized Anxiety Disorder' and 'Panic Disorder' mainly because defendant did not oppose the request')).

The ubiquitous presence of the Internet has become entrenched in our modern life, particularly in America and especially in the San Francisco Bay Area where Google and Facebook are headquartered. If Plaintiff's actual name were unmasked before a jury has rendered a verdict on his claim against State Farm, the highly sensitive and personal information about his mental illnesses, including blood phobia, agoraphobia, anxiety, panic attacks, and his decades-long dependance on alprazolam, that he has disclosed in pleadings filed on this Court's

docket (*e.g.*, Dkt. Nos. 64-1 at ¶¶ 3-5, 75-1 at ¶¶ 32-34; 81-1 at ¶ 6) would gravely stigmatize him and cause him severe personal embarrassment and subject him to intense ridicule. Information on the Internet spreads faster than wildfires and remains permanently there forever, and the Internet universe will continue to expand into the foreseeable future.

During fact discovery, State Farm subpoenaed over 20 years of Plaintiff's medical records from Kaiser Permanente and his original psychiatrist, obtaining over 4,800 pages of Plaintiff's medical records. (Dkt. No. 81-1 at ¶ 7.)

Additionally, Plaintiff provided State Farm dozens of his medical records during the claim investigation for his mysterious disappearance loss of his Blancpain wristwatch. (Dkt. No. 81-1 at ¶ 8.) *See*, *e.g.*, *Ms. R.H. v. United States of America*, 2023 WL 7563749, at *1 (N.D. Cal. 2023) (noting "Courts routinely recognize parties' interests in preserving the privacy of their mental-health information." (citations omitted)); *Doe v. Lincoln National Life Ins. Co.*, 2022 WL 2237214, at *1 (W.D. Wash. 2022) (stating "The Court finds Plaintiff's psychiatrist, who has treated her since September 2020, to be credible, and further finds that public disclosure of facts at issue in this action would likely cause Plaintiff mental harm. Plaintiff's concerns that public disclosure of these facts may negatively impact her career, while unfortunate, are reasonable given the broad scope of information available on the internet.").

Since Plaintiff began filing his pleadings for this action on the district court's docket through PACER, after the court permitted him to proceed *pro se* (Dkt. No. 38), Plaintiff would receive an unsolicited email advertisement shortly after each filing from darek@marketing.docketbird.com. (Dkt. No. 81-1 at ¶ 9.) The emails are sent to Plaintiff at the email address listed in the caption page of his pleadings: i.e., fundudeinfinity@gmail.com. (*Id.*) The sender's name appears as "Darek Teller." The subject line reads: "New filing in Doe v. State Farm General Insurance Company." Each unsolicited email states the same except with different PDF attachments.

The following is an October 18, 2024 email that Plaintiff received from darek@marketing.docketbird.com, and the messages states:

> "Hi James,
>
> I'm writing because DocketBird is following filings in Doe v. State Farm General Insurance Company. Another attorney of record on the case is already using DocketBird to follow it. As a courtesy, I've attached the documents that were just filed.
>
> With DocketBird, you'll never have to download a document from PACER again. DocketBird automatically downloads your filings, emails PDFs to you with filename formatting that you specify, and saves them in the cloud so that you can access them any time for free.
>
> I'd love to give you a 5-minute live demo of the product. Feel free to write back and let me know your availability, or just click here to schedule the demo.
>
> Sincerely,

Derek Teller
DocketBird Account Manager
7202 NE Highway 99, Suite 106-225
Vancouver, WA 98665
Tel. 503-810-2660
www.docketbird.com"

(Dkt. No. 81-1 at ¶ 9.)

While Plaintiff has ignored DocketBird's unsolicited emails, he believes DocketBird is a data broker that curates and sells court filings. (*Id.* at ¶ 10.) DocketBird is likely not alone in doing this, and Plaintiff finds such business practices deeply disturbing and very concerned that companies like DocketBird would make available to vast numbers of companies, lawyers, and potential employers conducting background checks, the pleadings filed in this action, exposing his actual name before a jury has decided his fate. (*Id.* at ¶ 11.) Apparently, people do not need a PACER account to obtain pleadings filed in federal courts; they can be bought from private entities.

Until a jury has rendered a verdict in this action, Plaintiff's actual name should be protected, and Plaintiff should be allowed to continue litigating this action pseudonymously as James Doe.

### B. **Plaintiff's Reputation for Honesty Would Be Irreparably Injured and He Would Suffer Severe Personal Embarrassments**

### (1) Plaintiff's Reputation for Honesty Would Suffer Irreparable Injury

Plaintiff needs anonymity before a jury has decided his credibility and honesty to avoid grave irreparable injury to his reputation for honesty among his family members, friends, peers, former classmates, and neighbors—these are the people in his life. State Farm accused Plaintiff of committing or seeking to commit insurance fraud, which is tantamount to accusing Plaintiff of criminal dishonesty. (Dkt. No. 81-1 ¶¶ 3-14.) *See Advanced Textile Corp.*, 214 F.3d at 1067-68 ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' where nondisclosure of the party's identity 'is necessary . . . to protect a person from . . . ridicule or personal embarrassment.'").

Importantly, the district court noted in its October 11, 2024 Order that whether Plaintiff intentionally misrepresented material facts, the scienter element, is a question for the jury. (Dkt. No. 74 at 7.)

Ms. Samatha Davidson, the State Farm Special Investigation Unit ("SIU") Claim Specialist assigned to investigate his claim for his lost wristwatch, reported

Plaintiff to the National Insurance Crime Bureau ("NICB")[2] and California's

Department of Insurance (the eFD-1 portal), (falsely) accusing him of committing

insurance fraud based on confusing statements he made in his initial encounters on

the telephone with her and an intake claim representative in July 2022.  (Dkt. No.

81-1 at ¶ 13.)  Plaintiff at the time was drinking heavily and taking excessive

amounts of alprazolam for being involved in another car accident (not his fault)

and sustaining new injuries when his existing injuries had been taking so long to

heal.  (*Id.* at ¶¶ 7, 29.)  Despite having provided sworn truthful testimony at his

September 7, 2023, Ms. Davidson ardently stuck to her initial groundless factual

conclusions that Plaintiff knowingly and intentionally made material

representations and concealed material facts in the investigation of his claim for

mysterious disappearance of his gold wristwatch, valued at $33,000.  (*Id.* at ¶¶ 3-

14, 31, 35.)

Insurance fraud is a felony punishable by imprisonment and fines under

California Penal Code § 550.  Despite State Farm filing a Suspected Fraudulent

Claim Referral (FD-1) with the California Department of Insurance ("DOI") on

---

[2] In *Bafford v. Travelers Casualty Ins. Co. of America*, No. 2012 WL 5465851 (E.D. Cal. 2012), the district court noted: "The court reserves a ruling on whether the NICB 'red flags' are in fact red flags, that is, factors which would reasonably justify the withholding or denial of an insurance claim. It may be that this is a question for the jury at trial."  *Id.*, 2012 WL 5465851, at *8 n. 7.

December 13, 2022, no investigator, police, or federal authority such as the Federal Bureau of Investigation ("FBI") has ever contacted Plaintiff regarding that FD-1 referral. (Dkt. No. 81-1 at ¶ 17.) No professional licensing agency has ever contacted Plaintiff about any fraudulent claim referral State Farm has made against him. (*Id.* at ¶ 16.)

Thomas Jefferson wrote to Nathaniel Macon on January 12, 1819, "whether the succeeding generation is to be more virtuous than their predecessors I cannot say; but I am sure they will have more worldly wisdom, and enough, I hope, to know that honesty is the 1st chapter in the book of wisdom." *See* https://www.monticello.org/research-education/thomas-jefferson-encyclopedia/honesty-first-chapter-book-wisdom/.

Christian B. Miller, an A.C. Professor of Philosophy at Wake Forest University and the project director of The Honesty Project, which was "a three-year exploration about the truth about honesty" that began in 2020 and that was led by Wake Forest University, found that "[h]onesty is widely regarded as an important virtue." *See* https://news.wfu.edu/2023/10/31/expanding-the-science-of-honesty/. In their research, Professor Miller said they "found that out of 60 different characteristics, people rank [honesty] No. 1 in terms of what they liked about another person, respected in another person and wanted to know about another person." *See id*.

Plaintiff's reputation for honesty is what connects him to his family, friends, peers, neighbors, former classmates, and potential new friends, and helps maintain his self-esteem. (Dkt. No. 75-1 ¶ 20.) Plaintiff's family would also be viewed as dishonest; guilty by association. (*Id.* at ¶ 23.) Compelling Plaintiff to reveal his actual name before a jury has passed judgment on his credibility and honesty would unjustifiably shatter his world, which includes his three-month old infant son and his foreign fiancé (from the same war-torn country where Plaintiff too was born and escaped) whom he will marry in America, completely and permanently. (*Id.* at ¶ 25.)

Plaintiff fears that people who know him will shun and ostracize him because he would be seen and perceived as dishonest for being accused of committing or seeking to commit insurance fraud—perception is everything. (Dkt. No. 75-1 at ¶ 21.) At the end of the day, like most ordinary people, all Plaintiff has is his reputation for honesty among my family, friends, peers, and neighbors. (*Id.* at ¶ 22.)

The social stigma of criminal dishonesty would devastate Plaintiff if his family, friends, peers, and neighbors found out that his insurance company accused him of committing or seeking to commit insurance fraud. (Dkt. No. 75-1 at ¶¶ 23, 26.) These people in his life would see him and perceive him as dishonest and shun him or distance themselves from him. (*Id.* at ¶ 23.) Plaintiff fears that he

would be ridiculed and anything he said would fall on deaf ears; who would believe anything a dishonest person said. (*Id.* at ¶ 24.) *See, e.g., SFBSC Mgmt., LLC*, 77 F. Supp. 3d at 994 (noting "This district has thus considered 'social stigmatization' among the 'most compelling' reasons for permitting anonymity."); *Roe #1 v. United States of America*, 2020 WL 869153, at *2 (noting "'[t]he most compelling situations [where courts permit plaintiffs to proceed pseudonymously] involve matters which are highly sensitive, such as social stigmatization[]'" (citations omitted).

In its September 23, 2024 Order, the district court stated that "[i]t is not in the public interests to hide from the public that a licensed attorney was found by a jury or some other court to have committed fraud." (Dkt. No. 68 at 4.) Contrary to any suggestions or innuendo that it is a *fait accompli* that a jury will find Plaintiff to have committed fraud, there is nothing in the record that supports such a conclusion. This is the same exact problem that *United of Omaha Life Ins. Co.*, 2023 WL 5919287, at *1, and *K.H.B. ex rel. K.D.B.*, 2018 WL 4053457, at *2, warned against. Plaintiff, like everyone else in America, deserves to be treated innocent until proven guilty.

### (2) Plaintiff Has Not Received Any Communication from Authorities

Plaintiff agrees with the district court that "[i]t is not in the public interest to hide from the public that a licensed attorney was found by a jury or some other court to have committed fraud." (Dkt. No. 68 at 4.)  What is absolutely true is that Plaintiff here has not been convicted of any crime, especially a heinous crime of fraud, which is a crime of dishonesty.  Such information would be available publicly.  No jury has yet to decide Plaintiff's moral character for honesty, and no jury has yet had an opportunity to determine the credibility of Plaintiff and the veracity of his claim for his lost wristwatch.  Thus, none of the conditions that the district court's statement above implied have been met; for example, no government authority has indicated Plaintiff for any crime, and Plaintiff is entitled under the U.S. Constitution the presumption of innocence until proven guilty beyond a reasonable doubt.  Plaintiff reiterates that he has never been tried and convicted of any crime.  *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 113 S.Ct. 2078, 2080-81 (1993).

The California Supreme Court has said:

"Attorneys must possess good moral character.  **Good moral character includes traits of 'honesty, fairness, candor, trustworthiness,** observance of fiduciary responsibility, respect for and obedience to the laws of the state and the nation and respect for the rights of others and for the judicial process.'  Persons of good character also do not commit acts or crimes

involving moral turpitude — a concept that embraces a wide range of deceitful and depraved behavior."

*In re Gossage*, 23 Cal.4t h 1080, 1095 (2000) (citations omitted) (emphasis added).

The California Supreme Court has also said:

Criminal conduct not committed in the practice of law or against a client reveals moral turpitude if it shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties) or if it involves such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that knowledge of the attorney's conduct would be likely to undermine public confidence in and respect for the legal profession.

*In re Lesansky*, 25 Cal.4th 11, 16 (2001) (citations omitted).

On its website, in the "Filing a Complaint against an Attorney" section, the State Bar of California ("Cal. BAR") provides a flow chart that illustrates what happens when a complaint is filed against an attorney.

https://www.calbar.ca.gov/Public/Complaints-Claims/How-to-File-a-Complaint/After-You-File. Anyone can file a complaint for free. Three cells contain information that are pertinent here.

In one cell, the Cal. BAR wrote:

"**If the investigation CONFIRMS misconduct,** the State Bar will either resolve the case with an alternative to discipline or send a notice to the attorney of its intent to file charges in an attempt to settle the case."

The subsequent cell notes:

"**If the case in NOT SETTLED,** the State Bar will file charges against the attorney in the State Bar Court and make the case public.

The State Bar Court will schedule proceedings."

The final cell notes:

"**If the State Bar Court judge determines that the attorney SHOULD BE suspended or disbarred,** the decision must be reviewed and approved by the California Supreme Court.  The State Bar Court can order less severe forms of discipline."

*Id.* (emphasis in original).

This Court has adopted the definition of dishonesty as "deceitful behavior, a 'disposition to defraud . . . [or] deceive,'" [or] "'[d]isposition to lie, cheat, or defraud[.]'" *United States of America v. Brackeen*, 969 F.2d 827, 829 (9th Cir. 1992) (en banc) (per curiam) (stating "we use 'dishonesty' narrowly to refer to a liar, and broadly to refer to a thief[]") (citation omitted).

Dishonest crimes "involve some element of misrepresentation or other indicium of a propensity to lie." *United States of America v. Ortega*, 561 F.2d 803, 805-06 (9th Cir. 1977) (discussing "dishonesty or false statement" in the context of Rule 609 of the Federal Rules of Evidence).  *See also United States of America v. Foster*, 227 F.3d 1096, 1100 (9th Cir. 2000) (explaining that crimes of dishonesty involve elements of  misrepresentation, falsification, or deception, at least in the context of FRE Rule 609).

To sustain an action for civil fraud in California, a plaintiff must prove the following elements against the defendant: that the defendant made "'(a) misrepresentation (false representation, concealment or nondisclosure); (b) [had] knowledge of falsity (or 'scienter'); (c) [had] intent to defraud, i.e., to induce reliance; (d) [plaintiff] justifiabl[y] reli[ed on the misrepresentation]; and (e) [plaintiff suffered] resulting damage.'" *Agricultural Ins. Co . v. Superior Court*, 70 Cal.App.4th 385, 402 (1999).

Plaintiff has notified the district court that he has never received any communication or notice from any attorney licensing agency (such as the State Bar of California) concerning, involving or arising out of any suspected fraudulent claim report(s) that State Farm may have filed against him; absolutely none.  (Dkt. Nos. 75-1 at ¶ 16, 81-1 ¶ 13.)  Moreover, Plaintiff is unaware of any administrative proceedings against him at any attorney licensing agency because of any suspected fraudulent claim report(s) that State Farm may have filed against him.  (*Id.* at ¶ 14.) Therefore, any suggestion or allegation that Plaintiff has violated his oath as an attorney or breached his duty to conduct himself with the utmost moral character or moral turpitude in life, work, or in the presentation of his claim to State Farm, or in this action, is totally baseless and absolutely false.

Other than what amounts to "she said, he said" statements, or what amounts to misstatements that Plaintiff seems to have made while he was under the

influence of alcohol and alprazolam and elevated mental stresses and hazy memory, State Farm has presented absolutely no evidence to support its assertions that Plaintiff knowingly and intentionally made material misrepresentations relating to the loss of his wristwatch during the claim investigation process. (Dkt. Nos. 75-1 at ¶¶ 29, 30, No. 81-1 at ¶ 16.) Thus, justice requires protecting Plaintiff's actual name until he has been tried before a jury or that a law licensing agency like the State Bar of California has charged him and convicted him of committing a crime of dishonesty and the California Supreme Court has reviewed and approved of the State Bar's recommendation for suspension or disbarment against Plaintiff. None of that has happened; if it had happened, such information would already be in the public domain.

### (3) Plaintiff Has Never Been Charged or Convicted of Any Crime

Plaintiff agrees with the district court that any criminal proceedings against him, potential incarceration of him, and disbarment actions against him, "require separate proceedings[.]" (Dkt. No. 68 at 3-4.) But State Farm never explained that to Plaintiff, instead it included the anti-fraud disclosure language in almost every correspondence and renewal notice and policy declaration materials such as form 553-4370 CA, including the coverage denial letter of January 3, 2023, that it sent to him, causing him to believe that State Farm and its SIU team have the means and will to initiate these actions against him. (Dkt. No. 81-1 at ¶ 23.)

State Farm's Anti-Fraud Disclosure endorsement, form 553-4370 CA

("Endorsement 553-4370 CA), that it includes in every policy renewal materials,

reads like it was modeled after California Penal Code § 550, and thus it seems to

be a criminal statute incorporated into an insurance policy. Endorsement 553-4370

CA states:

> "For your protection California law requires notification of the following disclosure:
>
> Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison."

(Dkt. No. 64-1, Ex. No. A.)

California Penal Code § 550 states in part: "(a) It is unlawful to do any of

the following, or to aid, abet, solicit, or conspire with any person to do any of the

following: (1) Knowingly present or cause to be presented any false or fraudulent

claim for the payment of a loss or injury, including payment of a loss or injury

under a contract of insurance." *See*, *e.g.*, *Banerjee v. Superior Court*, 69

Cal.App.5th 1093, 1103 (2021) (noting "Insurance fraud is a specific intent crime;

the defendant must specifically intend to defraud a person with a false or

fraudulent claim. The crime is complete upon the presentation of the claim[.]"

(citations omitted)); *Ellinger v. Magill*, 77 Cal.App.5th 287, 292 (2022) (noting

"Penal Code section 550, which criminalizes a broad range of deceptive acts in

connection with making, supporting, or opposing claims for payment, including but not limited to insurance claims." (citing Cal. Penal Code § 550, subds. (a) and (b)).

Conviction under Penal Code § 550 or Endorsement 553-4370 CA is subject to the Due Process Clause of the U.S. Constitution. *See Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078 (1993). There, the Supreme Court noted: "What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements[.]" *Id.*, 508 U.S. at 277-78, 113 S.Ct. at 2080-81 (citations omitted). Thus, any government authority seeking to secure a conviction for insurance fraud under Penal Code § 550 or State Farm's Form 553-4370 CA must prove beyond a reasonable doubt that Plaintiff knowingly and intentionally sought to commit or committed insurance fraud against State Farm.

Plaintiff has advised the district court that no government authority has ever contacted him about any suspicious fraudulent claim report(s) that State Farm has filed against him. (Dkt. No. 81-1 at ¶¶ 18, 19.) Yet, State Farm expressed eagerness for the Court to unmask Plaintiff's actual name. (Dkt. No. 80 at 2-3.)

**(4) State Farm Has Failed to Provide Plaintiff with a Potentially "Exonerating" Report from the DOI under Ins. Code § 1872.4(a)**

California Insurance Code § 1872.4(a) states in part: "If the commissioner [Cal. Dept. of Ins. or "DOI"] is satisfied that fraud, deceit, or intentional misrepresentation has not been committed, the commissioner shall report that determination to the insurer." Yet, State Farm failed to produce to Plaintiff, the district court or to discuss in its Response to Plaintiff's Motion to Stay pending appeal (Dkt. No. 75) the DOI's mandatory report to State Farm's report of suspected fraudulent claim report it filed against Plaintiff. (Dkt. No. 81-1 at ¶ 24.) If State Farm in fact has the DOI § 1872.4(a) report, Fed. R. Civ. P. 26(e)(1)(A) requires State Farm to provide that report to Plaintiff even after the fact discovery cutoff of July 31, 2024. A reasonable inference from State Farm's refusal to obtain it from the DOI or failure to supplement its discovery responses is that the DOI found the FD-1 report that State Farm filed on December 13, 2022 unfounded and filled with unsupported conclusory assertions. (Dkt. No. 75-1 at ¶ 17.) A section 1872.4(a) DOI report could provide evidence that supports Plaintiff's claim. If State Farm has nothing to hide in regard to the mandatory § 1872.4(a) report, why did it not discuss it in its Response (Dkt. No. 75 at 3 n. 3.) or produce the report in discovery or supplement its prior discovery response. (Dkt. No. 81-1 at ¶ 24.)

This is another factor that weighs in favor of permitting Plaintiff to continue to litigate this action pseudonymously.

## C. **The Public Already Has Access to All Substantive Pleadings**

The district court permitting Plaintiff to proceed pseudonymously thus far has not impeded any court proceedings.  In fact, the Court has adjudicated State Farm's motion to dismiss (Dkt. No. 22) and State Farm's motion for summary judgment or partial summary judgment (Dkt. No. 74) while permitting Plaintiff to proceed pseudonymously.   The Court knows Plaintiff's actual name already.  There is nothing about Plaintiff's identity  that makes it critical to any pretrial and trial proceedings in this action.  Plaintiff reiterates that he has never been charged or convicted of any crime concerning, relating to, or arising out of any suspected fraudulent claim report(s) that State Farm may have filed against him. (Dkt. No. 81-1 at ¶¶ 18, 19.)  No law licensing agency like the State Bar of California has ever contacted Plaintiff about any suspected fraudulent claim report(s) that State Farm may have filed against him.  (Dkt. Nos. 75-1 at ¶ 16, 81-1 ¶¶ 13-14.)

Plaintiff's anonymity has not threaten the principle of open courts; all substantive and important pleadings filed in this case are available to the public on the Court's docket through PACER.  *See Doe v. Steele*, 2020 WL 6712214, at *4 (S.D. Cal. Nov. 16, 2020) (stating "the public interest is not threatened by

withholding a plaintiff's identity where 'there is nothing about Plaintiff's identity which makes it "'critical to the working of justice'" and the basic facts of the case will be on public record[]") (citation omitted) (citing *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *10 (N.D. Cal. 2020) (citation omitted).) After a jury has decided Plaintiff fate in this action, the district court can then unmask Plaintiff's actual name to the public on its docket, as justice requires.

Additionally, the public would benefit from allowing Plaintiff to continue to prosecute this action pseudonymously, because insurance policyholders who reasonably believe they have been wrongfully accused of committing or seeking to commit insurance fraud by their insurers would not be discouraged or deterred from suing their insurers if they can do so pseudonymously. Compelling Plaintiff to reveal his name could chill him from vigorously prosecuting this action further and other similarly situated current and future insurance policyholders from challenging State Farm for wrongfully denying their claims and wrongfully accusing them of committing insurance fraud, particularly after their claims have been referred to State Farm's SIU. *See, e.g.*, *K.H.B. ex rel. K.D.B.*, 2018 WL 4053457; *United of Omaha Life Ins. Co.*, 2023 WL 5919287.

The facts of Plaintiff's case are definitely dissimilar to those in *The Connectors Realty Grp. Corp. v. State Farm Fire & Casualty Co.*, No. 19-cv-00743, pending in the US District Court for the Northern District of Illinois,

Eastern Division ("*Connectors*"). However, an inescapable commonality is that defendant State Farm Fire & Casualty Co.'s SIU practices are being challenged as unreasonably improper. In its Removal Papers, State Farm boasted about the staggering amount of claims its SIU department has denied in recent years. (Dkt. No. 1 at 9 ¶¶ 26, 27.) Thus, policyholders who presented or will be presenting legitimate claims and being improperly denied coverage for alleged fraud, misrepresentation, and concealment should be allowed to sue State Farm pseudonymously to vindicate their policy rights involving socially stigmatizing claims.

In their most recent court filings on October 22, 2024, the *Connectors* Plaintiff wrote:

> Plaintiff "also presented the evidence it has demonstrating that State Farm had a policy of treating claims made by policyholders from African American majority ZIP codes as presumptively fraudulent. (Pl.'s Opp. to Summary Judgment (R. 357), pp. 2-3.) Connectors explained the evidence it had regarding the Fill the Cups program and the furtherance of its policy of treating class members' claims as presumptively fraudulent. (Id., p. 2; citing State of Additional Facts (R. 358), ¶¶ 6-8, 12, 14-15, 23-26, 43.)."

*Connectors*, No. 19-cv-00743, Dkt. No. 417 at 4; Dkt. No. 81-1 at ¶ 5.

If *Connectors* makes it to a jury trial, and if a jury were to find the allegations about defendant's "Fill the Cup" policy and practices true, what the Connectors plaintiff will have unearthed could prove to be the tip of the iceberg,

where defendant State Farm is likely to be part of that iceberg. To shield and cover up its improper practices, State Farm could be deploying the business practices in California that Judges Alsup and Tigar envisioned. Therefore, compelling Plaintiff to reveal his actual name until a jury has rendered a verdict on his credibility and honesty in this action would result in the injustice envisioned by *K.H.B. ex rel. K.D.B.* and *United of Omaha Life Ins.* (Dkt. No. 81-1 at ¶ 5.) Such injustice would chill other State Farm policyholders from suing State Farm for wrongfully denying their legitimate claims. Hence, this Court should permit insurance claimants to sue their insurers anonymously and provide guidance to district courts within this circuit on how to proceed judiciously. This Court has the wisdom and the depth and scope of jurisprudence to do so in this regard.

### D. <u>State Farm Has Not and Will Not be Prejudiced</u>

State Farm has known Plaintiff's identity for over 30 years because it has insured his house in the East Bay for that long. State Farm has been able to conduct pretrial discovery and pretrial motion practices without any hinderance by the district court having allowed Plaintiff to proceed anonymously. State Farm has shown no prejudice—in fact, the opposite is true: State Farm has a plethora of personal information about Plaintiff, including over 4,800 pages of his medical records. (Dkt. No. 81-1 at ¶ 7.)

## IX.   CONCLUSION

Plaintiff-Appellant respectfully requests this Court to reverse the district court's September 23, 2024 order and permit him to proceed to trial pseudonymously.  Plaintiff also respectfully requests this Court to provide guidance to district courts on the parameters or factors to evaluate in determining what constitute socially stigmatizing lawsuits and how to evaluate ridicule and personal embarrassment for purposes of granting or denying litigants anonymity in their lawsuits.   Plaintiff submits that an insurance company accusing its policyholder of making a fraudulent insurance claim warrants protecting the policyholder litigant's actual name and identity until the lawsuit has been adjudicated to finality.

Dated:        November 11, 2024            Respectfully submitted,
                                           s/ James Doe
                                           ------------------------------
                                           James Doe, Pro Se
                                           Plaintiff-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-5967

I am the attorney or self-represented party.

**This brief contains** | 12,692 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/James Doe | **Date** | November 11, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*